IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS C. SMITH,

                        Petitioner,                              OPINION AND ORDER

            v.                                                   13-cv-337-wmc

GARY BOUGHTON, Warden,
Wisconsin Secure Program Facility,

                        Respondent.

State inmate Thomas C. Smith filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court conviction for conspiracy to commit first-degree sexual assault of a child. The respondent answered, and both parties have submitted briefing. Because Smith is not entitled to the relief sought, his petition will now be dismissed.

## BACKGROUND

In Waupaca County Case No. 03CF136, Smith was originally charged with the following four counts of conspiracy to commit child sexual abuse: (1) exposing a child to harmful material; (2) child enticement; (3) sexual assault of a child under 13 years of age; and (4) repeated sexual assault of a child. The underlying facts giving rise to these charges were "briefly described" by the Wisconsin Court of Appeals as being part of "one course of conduct."

> The alleged conduct . . . occurred entirely while Smith was in prison. The complaint alleged that Smith had telephone conversations with Elizabeth Lueck (whose legal last name was later determined to be Peterson). During

1

those conversations, Smith was alleged to have encouraged certain activity between [Peterson] and a female who had not yet attained the age of thirteen.  The activity included Peterson's insertion of sex toys into the child and viewing adult videotapes with the child.  The complaint alleged that these activities did, in fact, occur on a repeated basis. The complaint alleged facts from which it could be inferred that Smith intended these activities to "groom" the child for sexual activity with him after his release from prison. In addition, Smith was alleged to have provided money to Peterson.

*State v. Smith*, 2006AP2936, at 1-2 (Feb. 20, 2008).

Smith agreed to enter a no-contest plea to count three of the charge for conspiracy to commit sexual assault of a child.   In exchange for Smith's plea of no contest, the State agreed to dismiss the remaining counts, while reading them into the record for sentencing purposes.  *See* Wis. Stat. § 973.20(1g)(b) ("'Read-in crime' means any crime that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted."). The State also agreed to recommend a sentence of seven years in prison, to be followed by a ten-year term of extended supervision.  After considering the presentence report, the circuit court rejected the State's recommendation, finding it inadequate in light of the abhorrent nature of the offense and Smith's lengthy criminal history, which included prior sex offenses.  Accordingly, the circuit court sentenced Smith to serve 20 years in prison, followed by a 20-year term of extended supervision.

On direct appeal, Smith's appointed counsel initially filed a no-merit report under Wis. Stat. § 809.32, advising that there were no non-frivolous grounds for appeal.  *See Anders v. California*, 386 U.S. 738 (1967).  After scrutinizing the record independently,

2

the Wisconsin Court of Appeals identified one issue for further review:  whether Smith understood the basis for his plea to be under an "inchoate" theory or a "completed crime" theory of conspiracy.  *State v. Smith*, 2006AP2936, at 3.

In Wisconsin, a defendant can be charged with conspiracy for an inchoate or incomplete crime if he or any other party to the conspiracy has taken an act in furtherance of the contemplated crime. *See* Wis. Stat. § 939.31.[1]  Conspiracy can also form the basis for criminal liability as a party to a crime that was completed, but in which the defendant was not a person who directly committed the crime. *See* Wis. Stat. § 939.05(2)(c).[2]  The court of appeals questioned, therefore, whether Smith's plea was knowingly or intelligently made.  *State v. Smith*, 2006AP2936, at 4.

To clarify the issue identified by the court of appeals, Smith's appellate counsel then moved to dismiss the appeal.   Instead, he pursued a motion for postconviction relief with the circuit court.   In that motion, Smith sought to withdraw his plea on the grounds that it could not have been knowingly or intelligently made without an understanding of the State's actual theory of the conspiracy.

At an evidentiary hearing on his motion for postconviction relief, Smith's trial attorney testified that he had always understood Smith was entering a plea under a

---

[1] Wis. Stat. § 939.31 provides that "whoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may, if one or more of the parties to the conspiracy does an act to effect its object, be fined or imprisoned or both not to exceed the maximum provided for the completed crime . . . ."

[2] Wis. Stat. § 939.05(2)(c) outlines the "party-to-a-crime" theory of criminal liability, which provides that one "[i]s a party to a conspiracy with another to commit it or advises hires, counsels or otherwise procures another to commit it."

3

completed-crime conspiracy based on his involvement as a party to acts of sexual assault committed by Elizabeth Peterson.  (Dkt. # 24, *Hearing Trans.*, at 5-6, 13.)  As support, Smith's attorney presented his notes and a plea questionnaire based on the completed-crime theory of conspiracy.  (*Id*. at 6-10.)  Before Smith entered his no-contest plea, his trial attorney described going over the plea questionnaire with Smith, who initialed each paragraph and appeared to understand it.  (*Id*. at 10-12.)  In turn, Smith testified that he could not remember discussing the precise nature of the State's conspiracy theory and denied having an understanding of the elements that were outlined in the plea questionnaire.  (*Id*. at 15, 17.)

After hearing all of the testimony, the circuit court found Smith "was operating . . . under an assumption that there had been completed sexual assaults which had taken place" and understood that his plea involved a completed crime.  (*Id*. at 34.)  Crediting the testimony from Smith's trial attorney and supporting documentation prepared in connection with the plea, the circuit court, therefore, found that Smith knowingly, voluntarily and intelligently entered a no-contest plea to the conspiracy liability based upon criminal acts actually completed by Elizabeth Peterson at Smith's direction, *not* based on any inchoate or anticipated future acts to be committed by Smith after his release from prison.  (*Id*. at 36-41.)

After the circuit court denied Smith's postconviction motion, he appealed, arguing that his plea was invalid and not knowingly made with an adequate understanding of the State's conspiracy theory of liability.   While acknowledging that there were some

technical defects in the plea proceedings, the Wisconsin Court of Appeals ultimately agreed that Smith's plea to the conspiracy charge as a party to a completed crime was voluntarily and intelligently made.   *See State v. Smith*, 2010 WI App 19, ¶ 5, 323 Wis. 2d 276, 779 N.W.2d 723 (Dec. 23, 2009).   Thereafter, the Wisconsin Supreme Court denied Smith's petition for review of this issue.

Smith now seeks a writ of habeas corpus under 28 U.S.C. § 2254, contending as in state court that he did not knowingly or intelligently enter a plea to the conspiracy with a full understanding of the theory of liability asserted by the State in violation of the Due Process Clause found in the Fourteenth Amendment.   In contrast, the respondent argues that review is barred because Smith did not fairly exhaust his federal claim in state court. Alternatively, the respondent maintains that Smith's claim is without merit.

OPINION

I.   **Exhaustion and the Doctrine of Procedural Default**

Typically, a federal court may not entertain a state prisoner's petition for habeas corpus unless he has first exhausted all remedies available in state court.   28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).   The doctrine of exhaustion serves the interests of comity between federal and state sovereigns by giving state appellate courts a meaningful opportunity to consider and correct any alleged constitutional violations.   *See Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007). Inherent in this exhaustion requirement is the habeas petitioner's duty to "fully and

fairly" present his federal claims to the state courts. *See Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008) (citations omitted). To fairly present a claim, a petitioner must raise the same operative facts and controlling legal principles before the state courts in a procedurally proper manner. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). In other words, a petitioner is required to present the state courts with "the same [substantive] claim that he urges upon the federal courts." *Picard*, 404 U.S. at 275-76.

In his state appellate brief, Smith argued that he was entitled to withdraw his guilty plea to prevent a "manifest injustice," citing *State v. Booth*, 142 Wis. 2d 232, 418 N.W.2d 20 (Ct. App. 1987). More specifically, Smith argued that a manifest injustice occurs when a plea is not entered knowingly, voluntarily and intelligently, citing *State v. Giebel*, 198 Wis. 2d 207, 541 N.W.2d 815 (Ct. App. 1995), and Wis. Stat. § 971.08 (governing pleas of guilty and no contest).[3] Smith further argued that this was a "constitutional issue," citing several other state court cases -- *State v. Bollig*, 232 Wis. 2d 561, 605 N.W.2d 199; *State v. Van Camp*, 213 Wis. 2d 131, 569 N.W.2d 577 (1997); and *State v. Harvey*, 139 Wis. 2d 353, 407 N.W.2d 235 (1987).

While Smith's appellate brief makes no express reference to federal precedent, the state court cases he cited rely on a constitutional analysis under the Due Process Clause of the Fourteenth Amendment, specifically the requirement that a plea be voluntary,

---

[3] Wis. Stat. § 971.08(1)(a) requires the trial court to, among other things, "[a]ddress the defendant personally and determine that the plea is made voluntarily and with understanding of the nature of the charge and the potential punishment if convicted."

knowing and intelligently made.   Moreover, as the Seventh Circuit has noted, "the Wisconsin standard that a plea must be knowingly, intelligently, and voluntarily entered is the same as the constitutional due process standard."   *Warren v. Baenen*, 712 F.3d 1090, 1102 (7th Cir. 2013) (citing Wis. Stat. § 971.08).   Having framed his claim in terms of the constitutional due process standard applicable to determining the validity of a guilty plea, therefore, the court concludes that Smith's claim was fairly presented and adjudicated on the merits for purposes of the federal habeas corpus standard of review found in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, which is described in more detail below.

## II.    Standard of Review

As noted above, the claim presented by Smith was adjudicated on the merits by the circuit court following an evidentiary hearing; the Wisconsin Court of Appeals affirmed that decision with a written opinion; and the Wisconsin Supreme Court summarily denied review.   To the extent addressed on the merits, Smith must now show the claim's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).[4]   Alternatively, Smith

---

[4] The Wisconsin Court of Appeals adjudicated on the merits Smith's claim that his plea was involuntary and unintelligent, but it did so without reference to federal law. The United States Supreme Court has held that this is of no consequence for purposes of federal habeas corpus review.   *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that, under AEDPA, a state court need not cite or even be aware of Supreme Court precedent, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent); *see also Harrison v.*

must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

The standard outlined above is exacting and "highly deferential," demanding that state courts be given "the benefit of the doubt."  *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 13, 15 (2013).  To prevail, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  A state court's decision is deemed contrary to established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).  A state court unreasonably applies "clearly established precedent" if it identifies the correct governing legal principle, but unreasonably applies that principle to the facts of the case.  *See Brown v. Payton*, 544 U.S. 133, 141 (2005).  This demanding standard authorizes relief only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."  *Harrington*, 562 U.S. at 102.

In addition to the "formidable barrier" posed by this standard, *Titlow*, 134 S. Ct. at 16, a federal habeas corpus review for violating clearly established federal law under

---

*McBride*, 28 F.3d 652, 665-67 (7th Cir. 2005).

§ 2254(d)(1) must "presume that the [state] courts' factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013) (citing 28 U.S.C. § 2254(e)(1)).   While this standard is demanding, it is not insurmountable.   *Id*.   As for § 2254(d)(2), a federal court may conclude that a state court decision was based on an unreasonable determination of the facts only "if it rests upon factfinding that ignores the clear and convincing weight of the evidence." *Id*. (quotation and citation omitted).

### III.    Due Process in the Guilty Plea Context

To satisfy due process, a guilty plea must be knowingly, voluntarily, and intelligently entered.   *See, e.g.*, *Parke v. Raley*, 506 U.S. 20, 28-29 (1992); *Brady v. United States*, 397 U.S. 742, 747-48 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).   The same standard applies where, as here, the defendant enters a plea of no contest.[5]   *See Virsnieks v. Smith*, 521 F.3d 707, 714 n.8 (7th Cir. 2008) (citing *McGrath v. United States*, 402 F.2d 466, 467 (7th Cir. 1968)).   To enter a voluntary and intelligent plea, a defendant must have:   (1) full awareness of the plea's "direct consequences," *Brady*, 397 U.S. at 755; (2) "real notice of the true nature of the charge against him," *Henderson v.*

---

[5] A no-contest guilty plea is the equivalent of a guilty plea in that it waives the right to raise nonjurisdictional defects or defenses.   *See County of Racine v. Smith*, 122 Wis. 2d 431, 434, 362 N.W.2d 439 (Ct. App. 1984); *see also State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 631 579 N.W.2d 698 (1998) (observing that "a plea of no contest places the defendant in the same position as though he had been found guilty by the verdict of a jury") (citations omitted);   *State v. Princess Cinema of Milwaukee, Inc.*, 96 Wis. 2d 646, 651, 292 N.W.2d 807 (1980) ("Just as a plea of guilty, when voluntarily and understandingly made, constitutes a waiver of non-jurisdictional defects and defenses including claims of violations of constitutional rights prior to the plea, . . . so too will a plea of no

*Morgan*, 426 U.S. 637, 645 (1976); and (3) an understanding of "the law in relation to the facts," *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Whether a plea was entered knowingly and voluntarily is determined from "all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. Guilty pleas "are accorded a great measure of finality" because they "are important components of this country's criminal justice system." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). As a result, the defendant bears the burden of proving that the plea he entered was involuntary and unintelligent. *Virsnieks*, 521 F.3d at 715 (citing *Marx v. United States*, 930 F.2d 1246, 1250 (7th Cir. 1991)).

While acknowledging that the charges outlined in the criminal complaint were somewhat ambiguous as to the precise theory of the conspiracy, the Wisconsin Court of Appeals concluded that Smith understood the nature of the charge that was the subject of his plea:

> Smith's motion arises from ambiguity in the record about whether he was pleading no contest under Wis. Stat. § 939.31 as a conspirator in an inchoate crime he intended to commit in the future, or instead was pleading no contest under Wis. Stat. § 939.05(2)(c) as a conspirator in a crime that was completed by another person, allegedly at Smith's direction. The facts alleged in the complaint arguably support either theory of conspiracy, and the record up through sentencing contains references to both theories, with nothing that appears to unambiguously show which theory the case was charged or pled under.
>
> Smith argues that in light of this record, the court erred in finding that he understood his plea as being to a completed-crime theory of conspiracy. We are satisfied that the court's finding was not clearly erroneous. The plea questionnaire included what Smith appears to concede is a correct description of the completed-crime theory of conspiracy, as

---

contest.") (internal citation omitted).

10

applied to the facts of this case.  His trial counsel testified that he went over the version in the questionnaire with Smith, and that he appeared to understand it. During the plea colloquy, the circuit court read a different set of elements, but Smith did not testify that he was aware of this difference at the time or that it confused his understanding of the material in the plea questionnaire.  Smith testified that he did not understand the charge, but the court did not find that credible in light of the rest of the record. Accordingly, the court properly denied Smith's motion to withdraw his plea.

*State v. Smith*, 2010 WI App 19, ¶¶ 4-5, 323 Wis. 2d 276, 779 N.W.2d 723.  Thus, the Wisconsin Court of Appeals held that Smith's plea was voluntarily and knowingly made with an understanding of the charged conspiracy.  *See id*.

As that court noted, the state circuit court also denied Smith's motion to withdraw his plea after finding that it was voluntarily and knowingly made with an understanding that he was entering a plea to a conspiracy involving completed crimes.  (Dkt. # 24, *Hearing Trans.*, at 41.)  In doing so, the circuit court based its decision on the "credible" testimony given by Smith's trial attorney, who averred that it was always his understanding that the offense involved a completed-crime theory of conspiracy liability. (*Id*. at 32-38.)  Moreover, the attorney's testimony was supported by his contemporaneous notes and plea questionnaire, both of which described a completed-crime theory of conspiracy to commit sexual assault of a child based on acts committed by Elizabeth Peterson at Smith's direction.  (*Id*. at 34-36.)  By contrast, the circuit court expressly found that Smith's assertion (that his lawyer never explained the charges and that he did not understand the nature of the offense to which he was entering a plea) strained credulity.  (*Id*. at 36.)

In the end, Smith's greatest hurdle to obtaining relief is that state court fact

11

findings, including credibility determinations, are presumed correct on federal habeas review, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  Credibility determinations made by a trial court, in particular, are entitled to deference because the trial judge is in the best position to "observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." *Murrell v. Frank*, 332 F.3d 1102, 1112 (7th Cir. 2003) (citation, emphasis, and internal quotation marks omitted).

Here, Smith offers *nothing* to rebut the state court's findings, which are presumed correct in this instance.  Thus, relief is appropriate only if the state court's decision was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).  As noted above, a decision involves an unreasonable determination of the facts only "if it rests upon fact-finding that ignores the clear and convincing weight of the evidence."  *Taylor*, 721 F.3d at 817.  Smith falls far short of making that showing.

Indeed, the record in this case firmly supports the state court's findings and credibility determinations.  The criminal complaint against Smith was the subject of a preliminary hearing, where the testimony described a conspiracy involving completed acts of sexual assault committed by Elizabeth Peterson at Smith's direction.  (Dkt. # 20,

12

*Hearing Trans.*, at 14-18, 28.)   Smith was present during the preliminary hearing and admitted that he read the criminal complaint before entering his plea.   (Dkt. # 24, *Hearing Trans.*, at 24.)   The "probable cause" portion of that complaint describes in graphic detail how Smith directed Elizabeth Peterson from his prison cell at the Racine Correctional Institution between December 6, 2002, through May 8, 2003, to commit sex acts against her own granddaughter (M.A.S.), who was under the age of 13.   (Dkt. # 19, Exh. D at Appendix 1.)   Peterson in fact performed those sex acts on the child as directed and reported back to Smith what she had done.   (*Id.*)   While portions of the probable cause statement allude to the fact that Smith, a convicted sex offender, was "grooming" both of Peterson's granddaughters to be potential victims after his release from prison, the description of the offenses unambiguously reference *completed* acts of sexual assault by Peterson and done on Smith's behalf.   (*Id.*)

In addition to the preliminary hearing, the State's theory of the conspiracy was the subject of a pretrial hearing on Smith's motion to dismiss for insufficient evidence.   At the pretrial hearing, Smith argued there was no proof that he was a co-conspirator or party to the sexual assaults committed by Peterson.   After reviewing the transcript of the preliminary hearing, the trial court rejected that argument, finding ample evidence of Smith's role as a party to Peterson's completed crimes:

> With regard to Counts 3 and 4, I'm certainly satisfied from the testimony that sexual assaults occurred.   There's testimony of oral contact, there's testimony of touching, and apparently using various sexual toys on the children, allegedly at the behest of Mr. Smith.   There is, quite frankly, a lack of evidence within the transcript as to the age of the child, but I'm satisfied that Counts 3 and 4 are certainly sufficiently transactionally

connected to Counts 1 and 2, that they are appropriately charged.  I'm further satisfied that within the record there's sufficient evidence to conclude that the victim was under age, a child.  Mr. Smith had spoken with the individual on the phone or her sibling.  Mr. Smith was the one who was encouraging the conduct to take place.  So I'm satisfied that the conspiracy to commit the sexual assaults contained within Counts 3 and 4 are [related transactions], and therefore appropriately charged. . . .

(Dkt. # 21, *Hearing Trans.*, at 8-9.)

Before entering his plea, Smith and his attorney also reviewed and signed a "plea questionnaire and waiver of rights" form that was customized for Smith's case.  (Dkt. # 19, Exh. D at Appendix 2).  The form contains 39 numbered paragraphs, each one initialed by Smith, stipulating to certain facts related to Smith's plea.  (*Id.*)  Smith stipulated that he was pleading "no contest to the crime of: Conspiracy to Commit First Degree Sexual Assault," admitting further that "on or between the 6th day of December, 20002 and the 8th day of May, 2003, in the City of Clintonville, Waupaca County, Wisconsin, [he] did conspire to have sexual contact with a child under the age of 13, M.A.S. . . ."  (Id. at ¶ 5.)  By signing the plea questionnaire, Smith indicated that he understood the nature of the charges against him, which were described in greater detail as follows:

6.    I understand the nature of the charges against me.

7.    I understand that if this matter went to trial, the state would have to prove the following elements of the crime:

(a) Conspiracy to Commit Fist Degree Sexual Assault:

(1) That I was involved in a conspiracy.  A person is a member of a conspiracy if, with the intent that a crime be committed, that person agrees with or joins with another for the purpose of committing that crime.  A conspiracy is a

14

mutual understanding to accomplish some criminal objective or to work together for a common criminal purpose. If a person is a member of a conspiracy to commit a crime, *and that crime is committed by any member of the conspiracy*, then that person and all members of the conspiracy are guilty of the crime.

(2) That the crime to which I was a member of a conspiracy was that to commit first degree sexual assault on the child, M.A.S.

(3) That *a member of the conspiracy had sexual contact with M.A.S.*

(4) That *at the time of the sexual contact, M.A.S. had not attained the age of 13 years.*

(5) That sexual contact is the intentional touching of the intimate parts of M.A.S. That touching may be directly or through the clothing. That the sexual contact requires that either the person performing the sexual contact, or some other member of the conspiracy acted with the intent to become sexually aroused or gratified or to provide sexual arousal or gratification for some other purpose; or constitutes sexual degradation on the person being so touched.

(Id. at ¶¶ 6-7) (emphasis added). The form comports with the definition of a completed-crime conspiracy found in Wis. Stat. § 939.05, as well as the Wisconsin Jury Instructions for criminal cases. *See* Wis. JI-Criminal 410 and 570.

At the plea hearing itself, Smith further acknowledged that he placed his initials on the plea questionnaire after discussing each of the paragraphs with his attorney. (Dkt. # 22, *Plea Hearing*, at 4-5.) Smith acknowledged further that his attorney read to him each of the paragraphs and Smith further indicated that he understood each of them. (*Id*. at 5.) The trial court then engaged Smith in a colloquy required by Wis. Stat. § 971.08 to establish, among other things, Smith's understanding of the nature of the charge to which

he would plead.  Although the trial court erroneously read the elements of an inchoate crime of conspiracy, rather than the elements of a completed-crime conspiracy, the court expressly alluded to both the criminal complaint and testimony at the preliminary hearing, which established a completed-crime conspiracy as the factual basis for the plea.  (*Id*. at 16.)

At sentencing, the State again emphasized Smith's role in orchestrating the completed acts of sexual assault committed by Elizabeth Peterson.   (Dkt. # 23, *Sentencing Trans*., at 4-6.)   It is clear from Smith's remarks during the sentencing proceeding that he understood the charges to involve completed crimes that were committed by Peterson at his direction.   (*Id*. at 16-18.)   There is no indication Smith was confused about the theory of conspiracy asserted in connection with the charge that formed the basis for his conviction.

Finally, at the evidentiary hearing on Smith's motion for postconviction relief, the prosecutor insisted that it had been the State's theory from the start that Smith conspired with Peterson to sexually assault the victim, M.A.S., who was under the age of 13.   (Dkt. # 24, *Hearing Trans*., at 30-31.)   Smith's trial attorney understood this as well, testifying that (1) Smith understood the charges against him with respect to the sexual assaults committed by Elizabeth Peterson at his direction; and (2) Smith knowingly pled to the completed-crime conspiracy alleged against him.   (*Id*. at 5, 7-8, 11-12.)   Although Smith denied receiving any explanation about the alleged conspiracy, even he begrudgingly admitted initialing and signing the plea questionnaire that contained the correct elements

of the charged conspiracy.   (*Id*. at 18-19.)   Smith also admitted that he read the criminal complaint, which described at length Smith's role in orchestrating the sexual assaults committed by Peterson on a child.   (*Id*. at 24.)

After looking at the whole record, the circuit court concluded that "there was no question" that Smith understood the nature of the charge and knew that he was entering a plea to a conspiracy charge involving completed acts.   (*Id*. at 41.)   This court agrees. The credible testimony and documentation in the state court record support its findings that Smith (1) understood the nature of the charges against him, and (2) knew that he was pleading no contest to charges that involved a completed crime in which he was a party to sexual assaults committed by Peterson at his direction.   In contrast, there is *no* support for Smith's assertion that despite his numerous representations to the contrary, he was confused at the time he entered his plea about whether the conspiracy it issue involved an inchoate crime that was as yet incomplete.

Based on this record, the state court reasonably concluded that Smith's plea was voluntarily, knowingly and intelligently made in a manner that was consistent with clearly established Supreme Court precedent; and Smith has offered no basis to overturn that conclusion.   Accordingly, Smith is not entitled to relief under 28 U.S.C. §§ 2254(d)(1) or 2254(d)(2) and his petition will be dismissed.

## IV.   **Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or

deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, the court concludes that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

1.  The federal habeas corpus petition filed by Thomas C. Smith is DENIED
    and this case is DISMISSED with prejudice.

2.  A certificate of appealability is DENIED.   If petitioner wishes he may seek
    a certificate from the court of appeals under Fed. R. App. 22.

Entered this 29th day of November, 2016.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

19